

# Pascazi Law Offices PLLC

MICHAEL S. PASCAZI, ESQ.          CÉLINE M. PASCAZI, M.P.S.

WWW.PASCAZILAW.COM

INFO@PASCAZILAW.COM

June 9, 2023

**VIA ECF**
U.S. District Court SDNY
Honorable Katherine Polk Failla, U.S.D.J.
40 Foley Square
New York, NY 10007
Failla_nysdcchambers@nysd.uscourts.gov



Re:    <u>Mene v. Sokola</u>; Docket No.: 22-cv-10333 (KPF)
       Petitioner's Response to Respondent's Letter Concerning a Discovery Dispute

Dear Judge Failla

        This Office represents Petitioner Sebastien Mene in this proceeding brought under the International Child Abduction Remedies Act ("ICARA") and the Hague Abduction Convention ("Convention").

    I note that Respondent's Letter, through counsel, of June 6, 2023, is the first time I heard of Respondent's current request to extend discovery. There was no request for, and no "meet and confer" as relates the content of said current request letter. Apparently, Respondent's view is "the rules are for thee but not for me". Had Respondent requested to extend fact discovery of me, I would have consented, as long as the Pre-Trial is not delayed, and the case moves expeditiously to trial. Which is the command of the Convention.

    I now take the opportunity to address some of Respondent's allegations. Petitioner has not drip-fed, delayed, and held back disclosure. I am advised that Petitioner did not have much of what was requested of him in his care, custody or control in Poland. He, however, did not stop at that. In the interest of full disclosure, he reached out to third parties, mostly lawyers, from around the world and secured documents which were then turned over; including documents relating to events of *circa* 12 years ago.

    Petitioner has not waived responses or objections. I note that neither ICARA nor the Convention call for a particular civil procedure or evidentiary procedure (there is a considerable liberalization of evidentiary matters however). In fact, many of our Convention partner nations apply diverse civil procedures when adjudicating a return application. See <u>In the Matter of S (a child)</u>, 2012 UKSC 10, 2 A.C. 257 (U.K. Supreme Court, 14 March 2012) INCADAT HC/E/UKe 1147 (Hague Convention case decided entirely on papers including medical records, and absent oral testimony, in the High Court Family Division); <u>Cannock v. Fleguel</u>, 2008 ONCA 758 (Ontario Canada Court of Appeal, 2008) INCADAT HC/E/CA 852 (Application for return under the Hague Convention considered by Superior Court on affidavits, without hearing *viva voce* evidence); <u>In the Matter of C (a child)</u>, LB-2007-127164 (Borgarting Court of Appeal Norway, 2007) INCADAT HC/E/NO 1398 (In a Hague Convention case the

☐ 1065 Main Street, Suite D      ☐ 10 Rue Pasteur, 2ème Étage
Fishkill, N.Y. 12524 U.S.A.         95520 Osny [Paris] France
Ph: 845.897.4219 Fax: 845.468.7117   Tél: +33 9.77.21.86.40

SERVICE NOT ACCEPTED BY FAX OR EMAIL

Page 1



# Pascazi Law Offices PLLC

Michael S. Pascazi, Esq.            Céline M. Pascazi, M.P.S.

WWW.PASCAZILAW.COM

INFO@PASCAZILAW.COM

father only provided written testimony, yet the mother was afforded and provided oral testimony before the District Court); DeHaan v. Gracia, (2004) AJ No. 94 (QL) (Queens Bench Calgary Canada, 2004) INCADAT HC/E/CA 576 (An application under the Hague Convention is a summary proceeding. A full trial would cause further delay); The Chief Family Advocate of the Republic of South Africa v. IRRJ, Case No: EL 528/2019 1730/2019 (High Court South Africa, 2019) INCADAT HC/E/ZA 1452 (Indeed, there is direct support in the wording of the Hague Convention itself for return applications to be decided on the basis of affidavit evidence alone).

    Petitioner's 2Tb portable hard drive contains video and audio recordings of Petitioner's daily calls with 3 to 4 year-old BFS. Such calls were not requested in discovery by Respondent, however, out of an abundance of caution, and given that Respondent had to set up those calls for the parties' young son, the recordings were turned over. I am advised that the recordings were made on a cellphone, then transferred to a PC, and then to the portable hard drive for the most efficient means of turnover. I find nothing nefarious about the process used. The way the files were maintained on Petitioner's cellphone is the way they were transferred to Respondent. Again, this was done in the interest of full disclosure by Petitioner.

    With regard to Respondent's affirmative defenses, Respondent has pled a Convention Article 13(b) grave risk of harm defense, and an Article 20 human rights defense. Given that Respondent has not put on her case regarding her affirmative defenses, it is impossible for Petitioner to know exactly what facts should be controverted, rebutted or what testimony need be impeached.

    Petitioner has turned over whatever documents and ESI that he has, tending to show that upon BFS' return to Poland, his habitual residence, there is no risk of harm to BFS, and that BFS will not be placed in an intolerable situation. Petitioner also does not know the exact facts supporting Respondent's Asylum Application. Petitioner does not know exactly which basis, including the underlying nuances of each, Respondent has asserted to the USA for Asylum. Was it Race, Religion, Nationality, Political Opinion, Membership in a Social Group or the Torture Convention? Further, how does Respondent's circumstances leading to her Asylum Application impact BFS, if at all, noting that BFS does not have his own application? It is safe to say that BFS' human rights will be well protected here in the USA during the adjudication of Petitioner's BFS return to Poland application.

    I am advised that Petitioner has turned over the information he has concerning the Licensed Private Investigator ("PI"). Such as the investigator's name and contact information, interview notes, research notes, reports, and photographs. I note that these activities were from *circa* June/July 2022; last year. Petitioner was concerned that Respondent would flee further with BFS. Apparently from the PI's report, Respondent was living with BFS in a $17,000.00 per month apartment at Trump International Hotel and Towers in NYC. Yet, Respondent had no apparent means of producing income. Petitioner believes that the apartment had a connection to a Kuwaiti Diplomat. More

☐ 1065 Main Street, Suite D  
Fishkill, N.Y. 12524 U.S.A.  
Ph: 845.897.4219  Fax: 845.468.7117

☐ 10 Rue Pasteur, 2ème Étage  
95520 Osny [Paris] France  
Tél: +33 9.77.21.86.40

Service not accepted by fax or email



# Pascazi Law Offices PLLC

Michael S. Pascazi, Esq.          Céline M. Pascazi, M.P.S.

WWW.PASCAZILAW.COM

INFO@PASCAZILAW.COM

---

importantly, Respondent was photographed getting into a car with BFS, bearing <u>diplomatic plates</u>. Petitioner was very concerned that Respondent would use her connection to a Diplomat, and flee the USA with BFS, possibly to a middle eastern country not signatory to the Convention. All of this activity was reasonable under the circumstances, pursued by a worried left behind father.

    I am advised that Petitioner called in a welfare check to the NYPD on May 25, 2023. I understand that it was his only welfare check called in to date, regarding BFS. Petitioner did so after seeing Respondent look unsteady and drunk, when Petitioner was on the video with BFS for his daily call. Unfortunately, it took the NYPD hours to actually perform the welfare check, and at that point, apparently nothing was amiss or it was hidden well. Again, nothing nefarious, just a concerned left behind father.

    I am advised that Petitioner has engaged a New York/California law firm to attempt to vacate his plea in San Francisco from *circa* 12 years ago. I understand that said firm has gathered up what it could, regarding what happened in the San Francisco case, and then Petitioner included what transpired in France *vis a vis* his defamation claims against Petitioner's ex-fiancé (a French citizen), and his case before the European Court of Human Rights. I am advised by Petitioner that whatever documents and ESI he had concerning the San Francisco and French litigation, he has turned such over in discovery.

    In sum, it is apparent from Petitioner having turned over 265 distinct Exhibits totaling *circa* 2+ Tb of data, that Petitioner has been doing his best to turn over whatever he has been able to put his hands on, responsive to Respondent's demands.

    Again, I consent to the extension of fact discovery, as long as the Pre-Trial is not delayed, and the case moves expeditiously to trial.

Very truly yours,

*Michael S. Pascazi*

Michael S. Pascazi, ESQ.
Attorney for Petitioner

MSP/cmp

c.c.:    Opposing Counsel                    Via ECF

Page 3

1065 Main Street, Suite D          10 Rue Pasteur, 2ème Étage
Fishkill, N.Y. 12524 U.S.A.          95520 Osny [Paris] France
Ph: 845.897.4219  Fax: 845.468.7117          Tél: +33 9.77.21.86.40

Service not accepted by fax or email

The Court is in receipt of Respondent's letter raising a discovery dispute (Dkt. #31) and Petitioner's above response, which response the Court received by email due to a scheduled outage of the Court's electronic filing system.

The Court does not appreciate that Petitioner delayed in making his productions just to produce vast amounts of unorganized materials ahead of the close of fact discovery, regardless of whether his motivation in doing so was to overwhelm opposing counsel or was simply "in the interest of full disclosure." The Court also does not appreciate that Petitioner continues to cite Respondent's failure to turn over her asylum application as grounds for his refusal to make productions in response to Respondent's affirmative defenses, because this Court has already made clear that Respondent need not produce such application. (Dkt. #30). That said, it is not entirely clear to the Court what additional discovery Respondent seeks.

To that end, on or before **June 15, 2023**, Respondent shall provide Petitioner a list of all discovery she believes to be outstanding, and in doing so shall endeavor particularly to describe what documents she seeks regarding her affirmative defenses. Petitioner shall produce all responsive documents on or before **June 20, 2023.** Fact discovery is hereby extended through **June 20, 2023,** so that the parties may comply with the obligations detailed above.

Additionally, the deadline for the parties to submit their joint pre-conference letter, which is currently June 15, 2023 (*see* Dkt. #19), is hereby ADJOURNED to **June 21, 2023,** so that the parties may apprise the Court of the status of discovery in light of Respondent's forthcoming productions.

The Clerk of Court is directed to terminate the motion at docket entry 31.


Dated:    June 12, 2023             SO ORDERED.
          New York, New York

                                    *Katherine Polk Failla*

                                    HON. KATHERINE POLK FAILLA
                                    UNITED STATES DISTRICT JUDGE