

# Pascazi Law Offices PLLC

Michael S. Pascazi, Esq.       Céline M. Pascazi, M.P.S.

WWW.PASCAZILAW.COM

INFO@PASCAZILAW.COM

---

August 30, 2024

**VIA ECF**
United States District Court, SDNY
Hon. Katherine Polk Failla, U.S.D.J.
40 Foley Square, Room 2103
New York, NY 10007

Re: <u>Mene v. Sokola</u>, Case No.: 22-cv-10333 (KPF)

PETITIONER'S LETTER MOTION re:
1. Admit the Declaration of Respondent's Sister, Ewa Sokola, dated August 29, 2024 into Evidence;
2. Reopen the Convention Hearing for Limited Testimony Relating to Said Declaration and the Contents Thereof.

Dear Judge Polk Failla,

      As you know, this office represents Petitioner, Sebastien Funez Mene, in this Hague Child Abduction Convention ("Convention") proceeding.

      Petitioner now moves the Court pursuant to FRCP Rule 59, the Convention, the International Child Abduction Remedies Act ("ICARA") and/or the Inherent Power of the Court.

      Devolving recent events relating to Respondent and BFS in New York City have been occurring at breakneck speed. BFS has been removed from the care, custody, and control of Respondent by the New York Family Court, New York County ("Family Court"), pursuant to a proceeding commenced and prosecuted by the New York City child protective agency entitled: Administration for Children's Services ("ACS").

      A recent Notice of ACS states *inter alia*: ACS has reasonable cause to suspect that this child's life or health may be in danger. See Exhibit 1 attached. Said Notice was given by ACS when they were unable to locate BFS. It appears that Respondent was then hiding BFS.

      Further, a bench order has been issued by the Family Court on the record, directing temporary removal of BFS from Respondent after ACS had filed a Petition. See Exhibit 2 attached. I note that due to the speed of events, I do not yet have the signed paper Order from Judge Arias. But Exhibit 2 was provided to the Family Court by ACS, post-hearing, on August 28, 2024. I also note that Petitioner is not a named party to the Family Court proceeding, therefore, securing key information and papers has been challenging. Further, I have also sought from the NYPD 1st Precinct, Sector A, Neighborhood Coordination Officers, the various NYPD Reports of their involvement at Respondent's NYS apartment, as well as Police body-cam videos of their interactions since July 11, 2024, also at Respondent's NYC apartment. I do not have such yet.

Page 1

☐ 1065 Main Street, Suite D    ☐ 10 Rue Pasteur, 2ème Étage
Fishkill, N.Y. 12524 U.S.A.      95520 Osny [Paris] France
Ph: 845.897.4219 Fax: 845.468.7117    Tél: +33 9.77.21.86.40

SERVICE NOT ACCEPTED BY FAX OR EMAIL



    Moreover, Respondent's full blood sister, Ewa Sokola ("Ewa"), who has already given testimony during the Hearing days near the end of 2023, has come forward voluntarily to furnish material information to Petitioner, not previously disclosed by Respondent, which Ewa believes will set the record straight, assist in protecting BFS now (given what has happened with Respondent and BFS recently), and assist in securing BFS' return to Poland. Of course, Ewa can best describe her motivations herself during live testimony.

    Ewa has given a Declaration, dated August 29, 2024, to furnish material information not previously disclosed by Respondent, and to detail the recent events which she has witnessed involving Respondent, BFS, ACS, NYPD, etc., in NYC. See Exhibit 3 attached. As an example, it has been represented to the Court that Petitioner threatened Ewa. Ewa has refuted the same. In my view, Ewa's brief live testimony now will controvert the testimony of one or more witnesses for Respondent, related to the acts or omissions of Petitioner and Respondent, and corroborate much of the prior testimony of Petitioner at the Hearing. As another example, it is my understanding that Ewa can and will testify to Respondent being seen at Cabrini Medical Center, New York, NY, in 2007, and whereby, it is was concluded that Respondent suffered at that time with: Bi-polar disorder, Schizophrenia disorder, Personality disorder, eating disorder, and Alcohol dependance.

    Petitioner is certainly cognizant of the expedited nature of a Convention proceeding, and the need for a prompt resolution, pursuant to the Convention, ICARA, and U.S. Supreme Court precedent. Petitioner has not seen his child in the flesh for *circa* two years. However, given the large role that Ewa's new testimony will likely play, such should be addressed now, as opposed to litigation post-decision.

    It appears that the place where there is grave risk of harm to BFS is not Poland with Petitioner, but rather New York City with Respondent.

    I have moved as fast as reasonably possible to put these new matters before the Court. They have been in a state of flux. I note that the appearance before the Family Court, Judge Arias, took place only two days ago.

I Thank the Court in advance for its courtesies in this matter.

Very truly yours,

/s/ *Michael S. Pascazi*

Michael S. Pascazi, ESQ.
SDNY- MP2259

c.c.:     Opposing Counsel via ECF
         Attach.
MSP/

Page 2

☐ 1065 Main Street, Suite D     ☐ 10 Rue Pasteur, 2ème Étage
Fishkill, N.Y. 12524 U.S.A.     95520 Osny [Paris] France
Ph: 845.897.4219 Fax: 845.468.7117     Tél: +33 9.77.21.86.40

SERVICE NOT ACCEPTED BY FAX OR EMAIL

CS-878
9/18


**NYC** Administration for Children's Services

# NOTICE OF POSSIBLE COURT ACTION FOR THE CHILD(REN) TO BE PRODUCED

To: **Sokola Kaja Funez**
Name(s) of Parent(s)/Legally Responsible Person(s)

Regarding: Child(ren): **Sokola B▓▓▓ F▓▓▓**

The above child(ren) is/are under the age of eighteen years of age, and the **Administration for Children's Services (ACS)** has reasonable cause to suspect that this/these child(ren)'s life or health may be in danger. ACS's last known address for this/these child(ren) is:

Address: **8 Spruce St- Apt ▓▓**

ACS is conducting a child protective investigation that involves this/these child(ren). During the course of the investigation, the child protective specialist:

- [x] has been unable to locate the child(ren) listed above *or*
- [ ] has been unable to locate any other children in the household *or*
- [ ] has been denied access to the child or children in the household sufficient to determine their safety.

The Child Protective Specialist (CPS) is now considering asking the Family Court for an immediate court order to interview the child or children. If the CPS does ask the Family Court for this order, you will not be given any further notice. The Family Court may decide to require you to bring the child or children to a particular location for an interview.

## PLEASE IMMEDIATELY CONTACT THE CHILD PROTECTIVE SPECIALIST

**Jonathan Mner**
Name of Child Protective Specialist

**917-647-6540**
Phone Number

**Cindy Frias-Aguilar**
Name of Child Protective Specialist Supervisor I or II

**646-763-2950**
Phone Number

**150 William St.**
Address of Borough Office

PETITIONER'S EXHIBIT 1

F.C.A.§§1017, 1027　　　　　　　　　　Removal Order (Child Protective) 07/16

At a term of the Family Court of the State of New York, held in and for the County of __New York__, at __60 Lafayette St.__ New York on __August 28, 2024__

**PRESENT:**
Hon. __Maria Arias__
　　　　　Judge

In the Matter of

B███ S███████

A Child Under the Age of Eighteen
Alleged to be Neglected　　　　by

**KAJA SOKOLA**

　　Respondent(s)

Docket #: __NN-06948-24__

ACS #: __7359828__

**ORDER (Directing Temporary Removal of Child-After Petition Filed)**

A Petition under Article 10 of the Family Court Act having been filed with this Court alleging that the above-named child is a __neglected__ child); and a preliminary hearing having been held by this Court pursuant to Section 1027 of the Family Court Act; and the following person(s) having appeared with counsel herein to determine whether the child's interests require protection pending a final order of disposition; and the Court having determined that:

a. Said child's interests do require protection pending a final order of disposition and that continuation of residence by the child in the child's home would be contrary to the welfare and best interests of the child and that temporary removal of said child from __her__ place of residence is necessary to avoid imminent risk to said child's life or health. Continued placement of the child in __her__ home would be contrary to the welfare and best interests of the child because: **(be specific)** __The mother was psychiatrically hospitalized following an incident at her home. NYPD was called to the residence due to the mother drinking alcohol and exhibiting suicidal ideation in the presence of the child.__

b. Imminent risk to the child **would not** be eliminated by the issuance of an order of protection directing the removal of **Respondent** from the child's residence; and

c. ☐ Reasonable efforts were made prior to the date of the hearing herein to prevent or eliminate the need for removal from the home. **The specific efforts made were:** _____

☑ Reasonable efforts were not made prior to the date of the hearing herein, to prevent or eliminate the need for removal from the home but the lack of such efforts was reasonable and appropriate under the circumstances. **The specific reasons why it was not reasonable and appropriate to make such efforts are:** __The mother was psychiatrically hospitalized.__

☐ Reasonable efforts were not made prior to the date of the hearing herein to prevent or eliminate the need for removal from the home.

d. The Respondent __was__ present at the hearing of this application; and

e. Respondent who was not present was given notice by (__CPS Mina__); and

f. The removal is necessary because there is imminent risk to the child's life or health.



PETITIONER'S EXHIBIT
2

g. The removal was made pursuant to Family Court Act Section **1024** ; and

h. Based upon the investigation conducted by the Commissioner of Social Services it appears that [specify name] **Jamie Brilliant** is a suitable person with whom such child may appropriately reside. Such person seeks approval as a foster parent pursuant to the Social Services Law for the purposes of providing care for such child.

**NOW therefore, it is** [fill in applicable provision]:

ORDERED that the application for **removal** of the child) is hereby GRANTED; (and it is further)

(ORDERED that said **CHILD** be placed in the custody of the Administration for Children's Services pending further proceedings herein; and it is further

(ORDERED that **ANY** Hospital) ( **ANY** M.D.) is hereby authorized to provide such emergency medical or surgical procedures for the said child as may be necessary to safeguard the child's life or health;) and it is further

(ORDERED that if the child remains in foster care or is directly placed pursuant to Sections 1017 or 1055 of the Family Court Act, a permanency hearing shall be held on **the following date certain:** **February 5, 2025 at 12PM** ) (and it is further)

(ORDERED

Dated:

ENTER

_____
J.F.C.

NOTICE:
PLACEMENT OF YOUR CHILD IN FOSTER CARE MAY RESULT IN THE LOSS OF YOUR PARENTAL RIGHTS TO YOUR CHILD. IF YOUR CHILD STAYS IN FOSTER CARE FOR 15 OF THE MOST RECENT 22 MONTHS, THE AGENCY MAY BE REQUIRED BY LAW TO FILE A PETITION TO TERMINATE YOUR PARENTAL RIGHTS AND MAY FILE BEFORE THE END OF THE 15-MONTH PERIOD. ADDITIONALLY, IF SEVERE OR REPEATED ABUSE IS PROVEN BY CLEAR AND CONVINCING EVIDENCE, THIS FINDING MAY CONSTITUTE THE BASIS TO TERMINATE YOUR PARENTAL RIGHTS.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.

Check applicable box:
☐ Order mailed on [specify date(s) and to whom mailed]:_____
☐ Order received in court on [specify date(s) and to whom given]:_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Sebastien Funez Mene,)
    Petitioner,) Docket No.: 22-CV-10333 (KPF)
)
vs.) Judge: Hon. Katherine Polk Failla, U.S.D.J.
)
Kaja Funez Sokola,)
    Respondent.) **DECLARATION OF EWA SOKOLA**
)

I, Ewa Sokola ("Ewa"), hereby declare under the pains and penalties of perjury, as follows:

1. I am 50 years old.

2. I am a citizen of Poland.

3. I have resided in Poland my entire life except for the period 1996 to 2010 when I resided in Italy.

4. I am a licensed Physician in Poland.

5. I am fluent in English.

6. I have a 13-year-old son MW.

7. I am the biological sister of Respondent.

8. I know Petitioner through his marriage to Respondent.

9. I know Petitioner and Respondent's 5-year-old son BFS since birth.

10. I feel compelled to give this Declaration to save BFS from the effects of Respondent's alcoholism.

11. Respondent is a high functioning alcoholic and has been for some time, since she was much younger.

12. I came to New York City on or about August 11, 2024 upon the invitation of Respondent to visit with Respondent in her apartment with my son MW, and to assist Respondent with BFS.

Pascazi Law Offices PLLC
Michael S. Pascazi, ESQ., of Counsel SDNY MP2259
1065 Main Street, Suite D, Fishkill, NY 12524
Ph: 8458974219 Fax: 9454687117* Email: mpascazi@pascazilaw.com*
*Service Not Accepted Unless Authorized in Advance

PETITIONER'S EXHIBIT 3

13. Over the last few weeks, I noticed that Respondent was drinking alcohol to excess.

14. She would often slur her speech and pass out, including in the presence of BFS.

15. I understand that she attends Alcoholics Anonymous in New York City to help with her addiction, but it is obviously not working.

16. New York City Child Protective Services ("ACS") has been involved with BFS and Respondent since about July 11, 2024, when Respondent was caught on video passed out in the dog's bed on the floor, fully clothed, with BFS roaming the 52nd floor apartment, unsupervised, and on his own, with only a video call connection to his father in Poland, which BFS initiated, to keep BFS as safe as possible.

17. The NYPD has also been involved since that same time period, because of the danger Respondent's acts/omissions have been to the life, health, and safety of BFS.

18. The situation came to a head on August 27, 2024, when the NYPD reported to Respondent's apartment in the 1st Precinct, Sector A, of New York City, on the 52nd floor, as did ACS.

19. Respondent fought with NYPD Officers.

20. Respondent threatened to commit suicide by throwing herself off of the 52nd Floor balcony of the building.

21. Respondent was drunk at that time.

22. I have seen that level of drunkenness before from Respondent.

23. Respondent was near continuously drunk since about August 22, 2024.

24. Respondent swore to me since August 22, 2024 that she would stop drinking, repeatedly, but never did.

25. Respondent crossed the line with the NYPD. She was handcuffed and taken away.

26. BFS was placed into the protective custody of ACS after being checked out at a local hospital.

27. I have been interfacing with Petitioner to make arrangements in the best interests of BFS.

Pascazi Law Offices PLLC
Michael S. Pascazi, ESQ., of Counsel SDNY MP2259
1065 Main Street, Suite D, Fishkill, NY 12524
Ph: 8458974219 Fax: 9454687117* Email: mpascazi@pascazilaw.com*
*Service Not Accepted Unless Authorized in Advance

28. Petitioner and I have been working closely for BFS' sake.

29. In my view, BFS must be removed from Respondent and returned to Poland with his father; to his home.

30. Respondent is in no position to take care of BFS properly.

31. Respondent is going to need a good deal of therapy to get better herself.

32. I point out that I am working with Petitioner voluntarily to help Respondent, and BFS.

33. I am not represented by any New York or USA lawyer on any subject.

34. I have not been threatened by Petitioner with anything. Particularly, I have not been threatened with arrest and/or prosecution upon my return to Poland.

35. I want the best for BFS, as does nis father.

36. I note that Respondent would rather BFS be placed in foster care with strangers, than come home with me, his blood aunt, who has known him since birth.

37. What a bizarre position for a mother to take. Such belies how polluted Respondent's mind is with intoxicants.

38. I did not believe Petitioner before, when he told me of Respondent's outrageous behavior.

39. Now I do, having witnessed it first-hand.

40. In my view, custody of BFS should be awarded to Petitioner, and BFS should be ordered home to Poland ASAP.

41. I cannot imagine BFS being returned to Respondent, just the two of them residing together.

42. I have never witnessed Petitioner exhibiting any domestic violence toward Respondent nor toward BFS.

43. I have never witnessed Petitioner exhibiting domestic violence toward anyone.

44. Any testimony to the effect of domestic violence toward BFS or Respondent would be a fable.

Pascazi Law Offices PLLC
Michael S. Pascazi, ESQ., of Counsel SDNY MP2259
1065 Main Street, Suite D, Fishkill, NY 12524
Ph: 8458974219 Fax: 9454687117* Email: mpascazi@pascazilaw.com*
*Service Not Accepted Unless Authorized in Advance

45. In my experience Petitioner has always been a "hands on", warm and loving father to BFS, and a good husband to Respondent, notwithstanding how difficult Respondent was to deal with when she was drinking.

46. Respondent would "rant and rave" at Petitioner if she did not get her way, particularly when drunk.

47. Petitioner should be commended for his patience with and compassion toward Respondent.

48. On August 27, 2024, BFS told me, when he, I, MW, and an NYPD Policeman were in BFS' room at Respondent's apartment, that BFS had blood from his nose and a scratch under his left eye, and that mommy tried to take my phone.

49. On August 28, 2024, *circa* 7:30 p.m., Respondent threatened suicide again, 911 was called, Police and emergency personnel reported to the apartment of Respondent, and Respondent was then taken to a local hospital, and placed on a 72-hour hold.

50. On August 28, 2024, *circa* 9:00 p.m., I was in the apartment with BFS' newly and temporarily appointed, by the Family Court New York County, Foster lady, to wit; Attorney Jamie L. Brilliant ("Brilliant").

51. BFS was in his Pajamas and ready for sleep.

52. Brilliant stated to me that she was going to bring BFS with her downstairs to the street to walk her dog.

53. I responded that such was a bad idea, because BFS was very sleepy, in his pajamas, and that I would stay upstairs with BFS, if she needed to walk the dog.

54. Brilliant responded that she could handle the situation, did not need my help any further, and told me to leave her apartment then.

55. I left Brilliant's apartment at *circa* 9:45 p.m. and returned to my hotel which was only about two blocks away with MW.

56. Shortly thereafter, I received a text message from Brilliant asking me to return to her apartment, because BFS was hurt.

57. I spoke with Brilliant using my son's cell phone, because he was already talking to Brilliant, who has called.

58. It was dark out and raining out.

59. Apparently, from Brilliant's description to me, she took BFS into the street at *circa* 10:00 p.m., he then struck his head into a metal stanchion holding up scaffolding, which caused an injury to his head, and/or that injury was exacerbated by BFS falling to the ground and hitting the back of his head when he fell.

60. I then quickly re-dressed myself, and MW and I ran back to Brilliant's apartment. I was back in *circa* five minutes.

61. When I arrived, BFS was on his bed at Brilliant's apartment with his eyes closed and ice packs on his head.

62. Brilliant asked about BFS' health insurance coverage at that point. I said don't worry he is covered.

63. I then took BFS into my arms and we ran to the Hospital ER (New York Presbyterian) which was down the block.

64. Brilliant then told me that I had to leave, and get a badge as a visitor, because she was the Foster Mother and she was in charge.

65. I waited outside of the examination room and then the exam finished.

66. I asked for a copy of the examination report for Petitioner, the father.

67. The Nurse told me that I could not have a copy for the father, because Brilliant had represented that Petitioner, the father, had no custody rights over BFS.

68. That was not true at all.

69. Petitioner has full intact parental rights which have not been abrogated or modified.

Pascazi Law Offices PLLC
Michael S. Pascazi, ESQ., of Counsel SDNY MP2259
1065 Main Street, Suite D, Fishkill, NY 12524
Ph: 8458974219 Fax: 9454687117* Email: mpascazi@pascazilaw.com*
*Service Not Accepted Unless Authorized In Advance

70. I do not know why Brilliant would try to keep medical information from Petitioner about BFS' injury. But she did.

71. The bottom line is that BFS needs to go home to Poland ASAP, and return to a stable life, not the nomadic life he has been living with his unwell mother, Respondent, my sister.

72. And if my sister could pause herself and get herself well long enough, she too would realize that she needs to go home to Poland also, where her family awaits her.

**DECLARATION**

Pursuant to 28 U.S.C. Section 1746, I declare under the pains and penalties of perjury that the foregoing is true and correct.

Executed at New York City this 29th day of August 2024

_____X
Ewa Sokola

Pascazi Law Offices PLLC
Michael S. Pascazi, ESQ., of Counsel SDNY MP2259
1065 Main Street, Suite D, Fishkill, NY 12524
Ph: 8458974219 Fax: 9454687117* Email: mpascazi@pascazilaw.com*
*Service Not Accepted Unless Authorized in Advance