UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEBASTIEN FUNEZ MENE,

               Petitioner,

      -v.-

KAJA FUNEZ SOKOLA,

               Respondent.

22 Civ. 10333 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

      Before the Court is Petitioner Sebastien Funez Mene's ("Petitioner") motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). In particular, Petitioner asks this Court to reevaluate its September 17, 2024 Findings of Fact and Conclusions of Law, which denied his Verified Petition (the "Petition") made pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 1343 U.N.T.S. 49 (the "Hague Convention" or the "Convention"), as further implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011, filed against Respondent Kaja Funez Sokola ("Respondent"). The Petition sought the repatriation from the United States to Poland of the parties' only child, a minor — referred to herein as "BFS" — who was alleged to have been unlawfully removed from Poland by Respondent in early 2022. In denying the Petition, the Court found that the repatriation of BFS to Poland would expose the child to a grave risk of harm pursuant to Article 13(b) of the Hague Convention. For the reasons discussed herein, the

Court reaffirms its denial of the Petition and denies Petitioner's motion for reconsideration.

## PROCEDURAL HISTORY[1]

The Court assumes familiarity with the factual and procedural histories of this action and incorporates by reference the facts and procedural history set forth in its Findings of Fact and Conclusions of Law. *Mene* v. *Sokola*, No. 22 Civ. 10333 (KPF), 2024 WL 4227788, at *2-5 (S.D.N.Y. Sept. 17, 2024). The Court summarizes below only what is essential to the adjudication of the instant motion.

On December 6, 2022, Petitioner filed the Petition against Respondent, seeking the repatriation from the United States to Poland of the parties' child, BFS, who was then three years old. (Dkt. #1; Dkt. #7 (corrected)). After granting several extensions of the discovery period, the Court set the matter for

---

[1] The facts set forth in this Opinion are drawn from the testimony and exhibits entered into evidence at the bench trial in this matter, which began on October 30, 2023 (*see* October 30, 2023 Minute Entry), as well as the parties' pretrial and post-trial proposed findings of fact and conclusions of law (Dkt. #86, 88, 147, 148). References to transcripts from a particular trial day are cited using the convention "[Date] Tr." For ease of reference, the Court refers to the various exhibits entered into evidence at the trial as "Ex. P-[ ]," if offered by Petitioner, and "Ex. R-[ ]," if offered by Respondent. The Court also references the sworn statements of trial witnesses Respondent Kaja Sokola (Ex. R-111 ("Resp. Decl.")) and Bozena Anna Janowska (Ex. R-116 ("B.A. Janowska Aff.")).

The Court refers to Petitioner's motion for reconsideration as "Pet. Br." (Dkt. #168); to Respondent's opposition as "Resp. Opp." (Dkt. #171); and to Petitioner's Reply as "Pet. Reply" (Dkt. #175).

In support of his motion, Petitioner submitted the Declaration of Bozena Sokola (Dkt. #168-2 ("B. Sokola Sept. Decl.")) and the Declaration of Ewa Sokola (Dkt. #168-5 ("E. Sokola Oct. Decl.")). In opposition to Petitioner's motion, Respondent submitted the Declaration of Jonathan Schaffer-Goddard (Dkt. #171-1 ("Schaffer-Goddard Decl.")), the Declaration of Richard Min (Dkt. #171-2 ("Min Decl.")), and the Declaration of Michal Wochnik ("Dkt. #171-3 ("Wochnik Decl.")). In reply, Petitioner submitted the second Declaration of Ewa Sokola (Dkt. #175-5), the Declaration of Hanna Sokola (Dkt. #175-6), and the Declaration of Jarmila Moderska (Dkt. #175-7).

trial, to begin on October 30, 2023. (*See* July 20, 2023 Minute Entry; Dkt. #43 (post-conference order), 49 (transcript)).

A bench trial was conducted before the undersigned from October 30, 2023, through November 2, 2023. (*See* October 30, 2023 Minute Entry; October 31, 2023 Minute Entry; November 1, 2023 Minute Entry; and November 2, 2023 Minute Entry). Respondent called six witnesses: Respondent herself; Jarmila Moderska (Respondent's friend); Bozena Patkowska Sokola (Respondent's mother); Ewa Sokola (Respondent's sister); Dr. Joan Rothchild Hardin (who treated Respondent during her relationship with Petitioner); and Bozena Anna Janowska (Respondent's neighbor). (*See generally* Oct. 30 Tr.; Oct. 31 Tr.; Dkt. #76 (Respondent's witness list)). Petitioner then called five witnesses: Petitioner himself; Agnieska Pilarczyk (the owner of a Polish modeling agency); Paul Montana (an entrepreneur and friend of Petitioner); Tatenda Danielle Madzivanyika (BFS's nanny between December 2020 and April 2021); and Maciej Dzierzawski (a financial advisor and friend of Petitioner). (*See generally* Oct. 31 Tr.; Nov. 1 Tr.; A. Pilarczyk Aff.; P. Montana Aff.; T.D. Madzivanyika Aff.; M. Dzierzawski Aff.). On the last day of trial, Petitioner's and Respondent's respective expert witnesses testified. (*See* Nov. 2 Tr.; November 2, 2023 Minute Entry).

The Court also received exhibits, including evidence concerning Petitioner's 2012 conviction for stalking in the Superior Court of the State of California, City and County of San Francisco (the "2012 Conviction"). (*See generally* Ex. R-48, R-49). On December 29, 2023, Petitioner informed the

3

Court that the 2012 Conviction had been vacated *nunc pro tunc* by the California Superior Court. (Dkt. #112). At Petitioner's request, this Court reopened the hearing for supplemental discovery regarding the 2012 Conviction. (Dkt. #114). On February 6, 2024, during the supplemental discovery period, Respondent apprised the Court of an April 30, 2019 decision rendered by the Court of Appeal of Grenoble in France. (Dkt. #120). According to Respondent's letter, that decision discussed Petitioner's criminal history, which included his abuse of a former romantic partner and his escape from France against court orders. (*Id.*). Respondent provided the Court with additional documents substantiating Petitioner's criminal history on May 30, 2024. (*See generally* Dkt. #136). On June 6, 2024, the Court declared the hearing to be closed and ordered the parties to submit post-trial proposed findings of facts and conclusions of law. (Dkt. #139).

On August 30, 2024, Petitioner filed a letter motion requesting that the Court reopen the record and admit into evidence a more recent declaration from Ewa Sokola, dated August 29, 2024 (the "Ewa Sokola August Declaration"). (*See generally* Dkt. #164). In that letter, Petitioner informed the Court that BFS had been removed from the care, custody, and control of Respondent by the New York Family Court, New York County (the "New York Family Court"), through a proceeding commenced by New York City's child protective agency, the Administration for Children's Services ("ACS"). (*Id.* at 1). Petitioner argued that the Ewa Sokola August Declaration "furnish[ed] material information not previously disclosed by Respondent, and [ ] detail[ed] the

4

recent events which she has witnessed involving Respondent, BFS, ACS, NYPD, etc., in NYC." (*Id.* at 2). On September 5, 2024, Respondent filed a letter in response, arguing that both Petitioner's motion and the Ewa Sokola August Declaration gave an "inaccurate and incomplete account" of the recent events regarding BFS. (Dkt. #165 at 1).[2] Moreover, Respondent contended that Petitioner's letter and the Ewa Sokola August Declaration provided no grounds to reopen the evidentiary hearing. (*Id.* at 2). In the alternative, Respondent argued that, to the extent that this Court decided to reopen the evidentiary hearing, the ACS-approved foster carer must be joined as a respondent and provided the opportunity to make representations. (*Id.* at 3).

On September 17, 2024, the Court issued its Findings of Fact and Conclusions of Law denying the Petition. In so doing, the Court "recognize[d] the narrowness of the lane in which it operates." *Mene*, 2024 WL 4227788, at *23. "It was asked to determine … whether BFS was wrongfully removed from his State of habitual residence, and whether there was an affirmative defense that justified BFS's removal by Respondent." (*Id.*). The Court "answered both questions in the affirmative" — BFS was wrongfully removed from Poland, but that removal was justified because repatriation of BFS to Poland would expose him to a grave risk of harm pursuant to Article 13(b) of the Hague Convention.

---

[2]  According to Respondent, the relationship between Respondent and her sister Ewa Sokola had "deteriorat[ed]." (*See* Dkt. #165 at 1). Respondent claims that several incidents demonstrate this deterioration. First, Ewa Sokola's son was arrested for assaulting Respondent, and later Ewa Sokola and her son were removed from Respondent's apartment by the police. Subsequently, among other things, Ewa Sokola allegedly attempted to blackmail Respondent, took and refused to return Respondent's dog, and took and retained without permission BFS's Polish ID card and passport. (*Id.* at 1-2).

5

(*Id.* at 22-23). In reaching those conclusions, the Court considered the entire record before it, which included the letters filed by the parties in the weeks leading up to the Court's decision. (*See id.*; *see also* Dkt. #150-166). Those letters discussed, among other things, Respondent's alcohol and mental health problems and BFS's removal from Respondent's care and placement in temporary foster care. (*See generally* Dkt. #150-166). Addressing those issues, the Court expressed due concern for BFS's safety, but ultimately decided not to reopen the record and to instead "issue its decision at the earliest possible opportunity, in order to allow other proceedings in New York and Poland that are more directly concerned with the custody and supervision of BFS to proceed." *Mene*, 2024 WL 4227788, at *22.

Following the issuance of that decision, on October 14, 2024, Petitioner filed the motion for reconsideration that is now before the Court. (Dkt. #168). On November 1, 2024, Respondent filed her opposition to the motion. (Dkt. #171). Petitioner filed his reply in further support of the motion on December 1, 2024. (Dkt. #175).

## APPLICABLE LAW

Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 govern motions for reconsideration, depending on the type of order at issue and the relief sought. *See Zayas* v. *Banks*, No. 22 Civ. 7112 (KPF), 2024 WL 1657880, at *3 (S.D.N.Y. Apr. 17, 2024); *Silverberg* v. *DryShips Inc.*, No. 17 Civ. 4547 (SJF), 2018 WL 10669653, at *2 (E.D.N.Y. Aug. 21, 2018); *United States* v. *Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y.*

*11362*, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014); Fed. R. Civ. P. 59(e) (motion to alter or amend judgment), 60(b) (motion for relief from judgment or order); Local Civ. R. 6.3 (motion for reconsideration).  All reconsideration motions are subject to a "strict" standard, *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and will be granted "only when the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *SEC* v. *Gottlieb*, No. 98 Civ. 2636 (LAP), 2021 WL 5450360, at *2 (S.D.N.Y. Nov. 22, 2021) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

    A reconsideration motion brought pursuant to Rule 60(b) may be granted where the Court finds there is:

> [i] mistake, inadvertence, surprise, or excusable neglect; [ii] newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [iii] fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; [iv] the judgment is void; [v] the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or [vi] any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  The Second Circuit "has instructed that Rule 60(b) is 'extraordinary judicial relief' and can be granted 'only upon a showing of exceptional circumstances.'"  *Dietrich* v. *Bauer*, 198 F.R.D. 397, 400 (S.D.N.Y. 2001) (quoting *Nemaizer* v. *Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

7

A reconsideration motion is not a vehicle to (i) "introduce additional facts not in the record on the original motion"; (ii) "advance[ ] new arguments or issues that could have been raised on the original motion"; or (iii) relitigate an issue already decided." *Silverberg*, 2018 WL 10669653, at *2 (internal quotation marks omitted) (collecting cases); *accord Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012). But reconsideration may be warranted where the movant "can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257; *see also Lichtenberg* v. *Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (summary order). Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." *Vincent* v. *Money Store*, No. 03 Civ. 2876 (JGK), 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011) (internal quotation marks omitted).

## DISCUSSION

Petitioner argues that the Court must grant reconsideration pursuant to (i) Rule 59(e) based on the availability of new evidence and the need to prevent manifest injustice and (ii) Rule 60(b)(3) and (6) based on Respondent's purported misconduct, "including witness tampering, corrupt persuasion [ ], obstruction of justice, and [c]oercion." (Pet. Br. 2-3). Finally, Petitioner contends that this Court should defer to the September 26, 2024 custody decision issued by the Circuit Court of Warsaw-Praga, Poland (the "Polish

8

Court Order") in Petitioner and Respondent's divorce proceeding. (*Id.* at 9-11). The Court addresses each of these arguments in turn.

### A. No New Evidence Justifies Reopening the Hearing

Petitioner argues that the following evidence justifies reopening the proceedings in this matter: (i) "new facts" given in a September 14, 2024 declaration of Bozena Sokola (the "Bozena Sokola September Declaration") and an October 7, 2024 declaration of Ewa Sokola (the "Ewa Sokola October Declaration"); and (ii) "documentary evidence" that Respondent is "suffering from mental health disease or defect and suffering from alcohol dependency and intoxication," which evidence was purportedly withheld from Petitioner. (Pet. Br. 1). In Petitioner's scattershot opening brief, he describes the Bozena Sokola September Declaration as articulating "new facts" regarding Respondent's alcohol dependency and mental health problems. (*Id.* at 4-5). In that declaration, Respondent's mother states that Respondent is an alcoholic and a danger to BFS. (*See* B. Sokola Sept. Decl. ¶¶ 12, 65, 74). Similarly, Petitioner claims that the Ewa Sokola October Declaration "establishes that [Petitioner] was correct and truthful in his description at the Bench Trial of [Respondent's] mental instabilities and lack of truthfulness." (Pet. Br. 6). While Petitioner does not point to any specific portions of that declaration, the Court notes that Respondent's sister claims in the Ewa Sokola October Declaration that she was motivated to give the declaration "to save BFS from the effects of Respondent's alcoholism and mental health disorders, and to

9

disclose the corruption of the bench trial[.]" (E. Sokola Oct. Decl. ¶ 10).[3]  The remainder of the purportedly new facts and evidence put forth by Petitioner constitute various medical forms and documents from 2007 and 2012, demonstrating that Respondent has struggled with alcoholism. (*See generally* Pet. Br., Ex. 2a, 2b).

The Court finds that Petitioner has not identified any new evidence or a manifest injustice warranting the altering of this Court's Findings of Fact and Conclusions of Law.  *See* Fed. R. Civ. P. 59(e), 60(b).  First, the evidence regarding Respondent's history of alcohol addiction is not new.  In fact, Petitioner acknowledged that history at the bench trial. (*See* Oct. 31 Tr. 333:14-15, 22-25 (Petitioner stating that he was "proud" that Respondent had "stop[ped] her addiction to alcohol" during their marriage)).  Moreover, Petitioner raised arguments similar to those made here in letter motions to the Court in advance of this Court's issuing the Findings of Fact and Conclusions of Law.  (*See generally* Dkt. #150, 152, 154, 158, 164, 166).  Those letter motions detailed Respondent's recent issues with alcohol abuse and the removal of BFS from her custody and placement in temporary foster care by the New York Family Court.  (*See generally id.*).  This Court explicitly recognized those developments and expressed its concern for BFS and his safety, but ultimately decided not to reopen the record and to expeditiously issue its decision.  *Mene*, 2024 WL 4227788, at *22-23 ("Whatever the nature

---

[3] As discussed further *infra*, the Ewa Sokola October Declaration predominantly argues that Respondent and Respondent's attorneys engaged in witness tampering and coercion. (*See* E. Sokola Oct. Decl. ¶¶ 10, 26-36).

of Respondent's current problems, they do not change the extensive record of Petitioner's tendencies toward physical and psychological abuse, including abuse of BFS."). That Petitioner now puts forth the Bozena Sokola September Declaration and the Ewa Sokola October Declaration as evidence of these same facts does not alter this Court's analysis. Where, as here, the motion for reconsideration "offers substantially the same arguments ... offered on the original motion," it must be denied. *Walsh* v. *Townsquare Media, Inc.*, 565 F. Supp. 3d 400, 402 (S.D.N.Y. 2021).

The Court recognizes that Bozena Sokola and Ewa Sokola have contradicted portions of their prior testimony before this Court by stating that they now believe BFS should be placed with Petitioner. But those developments also do not alter this Court's conclusions. As stated in the Findings of Fact and Conclusions of Law, the Court found Respondent's testimony credible. That testimony included concrete examples of Petitioner's emotional, financial, and physical abuse of Respondent (*see, e.g.*, Resp. Decl. ¶¶ 35-36, 39, 53-54, 110-111; Oct. 30 Tr. 40:17-23, 76:18-21 (Respondent's testimony)), as well as his psychological and physical abuse of BFS (*see, e.g.*, Resp. Decl. ¶¶ 100-101, 148-149). Further, some of that testimony was corroborated by evidence submitted as exhibits (*see, e.g.*, Ex. R-46, R-47 (evidence of Petitioner hiring private detectives to surveil Respondent); Ex. R-18, R-19 (documentary evidence supporting allegations that Petitioner stopped paying the mortgage on Respondent's parents' home)) and by another witness who has not recanted her statements (*see, e.g.*, B.A. Janowska Aff. ¶¶ 1-

11

10(Respondent's neighbor reporting intervening in an incident between Petitioner and Respondent)).  Finally, as discussed in detail in the Findings of Fact and Conclusions of Law, Petitioner repeatedly lied to this Court regarding his criminal record.  *Mene*, 2024 WL 4227788, at *14-17.  Those statements were proven to be false in part by documents disclosing that Petitioner had been convicted on four occasions of crimes in France and had served at least three prison sentences.  (*Id.*; *see also* Dkt. #120-1, 136-1).  Indeed, at the time the Findings of Fact and Conclusions of Law was issued, there were (at least) two open arrest warrants for Petitioner in France.  *Mene*, 2024 WL 4227788, at *14-17.  And in one of those documents, the Court of Grenoble made observations regarding Petitioner's conduct in that proceeding that mirrored Petitioner's conduct in this proceeding.  (*See id.*; *see also* Dkt. #120-1 at 22).  Accordingly, the Court will not grant reconsideration on the basis that Bozena Sokola and Ewa Sokola have contradicted their earlier testimony.

**B.    No Misconduct, Fraud, or Misrepresentation Justifies Reconsideration**

Petitioner next argues that purported misconduct by Respondent, including witness tampering, justifies reopening the hearing pursuant to Federal Rule of Civil Procedure 60(b)(3).  (Pet. Br. 7-9).  "To prevail on a motion for a new trial pursuant to [Rule] 60(b)(3), the movant must show that [i] the adverse party engaged in fraud, misrepresentation or misconduct by clear and convincing evidence and that [ii] such misconduct substantially interfered with the movant's ability to fully and fairly present its case."  *Penzo* v. *Consol. Edison Co. of N.Y., Inc.*, No. 19 Civ. 7478 (MKV), 2024 WL 3824072, at *7

(S.D.N.Y. Aug. 15, 2024) (quoting *Thomas* v. *City of New York*, 293 F.R.D. 498, 503 (S.D.N.Y. 2013)); *see also Jeanty* v. *City of Utica*, No. 23-369, 2024 WL 4429417, at *2 (2d Cir. Oct. 7, 2024) (summary order) ("Generally, a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." (internal quotation marks omitted)).  "A party meets the clear and convincing evidence standard 'only if the material it offer[s] instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence [its adversary] offer[s] in opposition.'" *Penzo*, 2024 WL 3824072, at *8 (alterations in original) (quoting *Geo-Grp. Commc'ns, Inc.* v. *Chopra*, No. 15 Civ. 1756 (KPF), 2023 WL 6235160, at *11 (S.D.N.Y. Sept. 26, 2023) (quoting *Colorado* v. *New Mexico*, 467 U.S. 310, 316 (1984))).

   Petitioner's allegations of Respondent's misconduct are not supported by clear and convincing evidence.  Petitioner argues that the Ewa Sokola October Declaration is evidence of Respondent's misconduct.  Specifically, Petitioner points to Ewa Sokola's assertions that: (i) Respondent's Polish attorney Michal Wochnik instructed the witnesses in this matter to "exacerbate the description of some events from the past, in order to show [Petitioner] being violent" and "to lie about [Petitioner] being violent toward [Respondent], BFS, and [Petitioner]'s dogs" (Pet. Br. 7 (quoting E. Sokola Oct. Decl. ¶¶ 35-36)), and blackmailed Ewa Sokola by threatening to bring false criminal charges against Ewa Sokola's son (*id.* at 7-8 (citing E. Sokola Oct. Decl. ¶¶ 47)); and (ii) Respondent's New York attorney Jonathan Schaffer-Goddard informed

13

Respondent that she could testify to conduct that she did not see as her "own personal experience" (*id.* at 8 (quoting E. Sokola Oct. Decl. ¶¶ 59)).

The Ewa Sokola October Declaration is far from clear and convincing evidence of misconduct by either Mr. Wochnik or Mr. Schaffer-Goddard on behalf of Respondent. None of the allegations now made against Mr. Wochnik or Mr. Schaffer-Goddard was made at the bench trial, nor were they made in the post-trial Ewa Sokola August Declaration. (*See* Dkt. #164; *see generally* Oct. 30 Tr. and Oct. 31 Tr.). Further, both Mr. Wochnik and Mr. Schaffer-Goddard provided declarations in response to Petitioner's recent allegations against them that persuasively refute those allegations. (*See generally* Wochnik Decl.; Schaffer-Goddard Decl.).

In his declaration, Mr. Wochnik asserted that he had not "at any time, instructed Ewa Sokola or Bozena Sokola to give false testimony, or to lie under oath." (Wochnik Decl. ¶ 6). Further, he provided a detailed account of his interactions with Ewa Sokola and Bozena Sokola. (*See id.* ¶¶ 7-23). He asserted that on September 20, 2023, the only time he interacted with Ewa Sokola in person, he advised Ewa Sokola and Bozena Sokola "on *how* to give their evidence," which included innocuous instructions such as "to listen carefully [to] questions and be concrete while responding." (*Id.* ¶ 10). Mr. Wochnik also reported that he "remain[s] a defendant in a claim by [Petitioner] against [him] in Poland" and "consider[s] … this motion [to be] a continuation of [Petitioner's] attacks on [him] as [Respondent's] lawyer." (*Id.* ¶ 23).

14

For his part, Mr. Schaffer-Goddard explicitly declared that "there is simply no basis for [Ewa Sokola's] accusations that [he had] been involved in some kind of plot." (Schaffer-Goddard Decl. ¶ 23). He specifically "recall[ed] telling Ewa that she could testify to what [Respondent] had told her, but that to the extent she would be testifying as to what another person had told her (rather than to what she witnessed herself), she should be clear that her testimony was based on what someone else had told her." (*Id.* ¶ 20). The Court finds those statements to be credible, especially in light of its own colloquy with Ewa Sokola during the bench trial, in which the Court clarified that Ewa Sokola was testifying as to incidents at which she was present, as distinguished from those incidents at which she was not present. (*See* Oct. 31 Tr. 216:1-25, 217:1-2). Mr. Schaffer-Goddard also supported his declaration with screenshots of his correspondence with Ewa Sokola. (*See* Schaffer-Goddard Decl., Ex. 2, 3, 4, 6). Like Mr. Wochnik, Mr. Schaffer-Goddard also included in his declaration a detailed account of his interactions with Ewa Sokola, further bolstering the credibility of his statements as compared with Ewa Sokola's threadbare accusations. (*Id.* ¶¶ 5-24). Thus, the Court finds that no misconduct, fraud, or misrepresentation has occurred that would justify reconsideration.

C. **The Polish Court Order Does Not Alter This Court's Analysis**

Finally, Petitioner argues that this Court "should now defer" to the Polish Court Order under the doctrine of prescriptive comity. (Pet. Br. 10). As discussed herein, this Court was careful to rule only on the questions before it

15

in issuing its Findings of Fact and Conclusions of Law. It was this Court's role to determine whether BFS was wrongfully removed from Poland, and whether an affirmative defense justified that removal. It was not for this Court to determine the question of rightful custody of BFS, and it is undisputed by the parties that the question of custody and recognition of the Polish Court Order is currently being litigated in the New York Family Court. (*See* Resp. Opp. 14). Accordingly, the Court finds that this argument provides no grounds to grant Petitioner's motion for reconsideration.

## CONCLUSION

For the above reasons, the Court DENIES Petitioner's motion for reconsideration. The Clerk of Court is directed to terminate the pending motion at docket entry 168.

SO ORDERED.

Dated:   June 23, 2025
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge